Artaruth BABCOCK, et vir, Petitioners,

v.

NORTHWEST MEMORIAL HOSPITAL, et al., Respondents.

No. C–7691.

Supreme Court of Texas.

March 29, 1989.

Kevin Dubose and Jim M. Perdue, Perdue, Turner & Berry, Ray Hensarling, Houston, Tex., for petitioners.

Sam W. Cruse, Jr., Andrews & Kurth, Dion C. Raymos, Ryan & Smith, and John Roberson, John Landa, Jr. and Suzan Cardwell, Hill Parker, Franklin, Cardwell & Jones, Houston, Tex., for respondents.

## OPINION ON MOTION FOR REHEARING

MAUZY, Justice.

The court's opinion of December 14, 1988 is withdrawn and the following is substituted therefor.

This cause concerns the propriety of a trial court's refusal to allow attorneys to question the venire panel about the alleged "lawsuit crisis." Artaruth Babcock and husband, Gifford Babcock, sued respondents, Northwest Memorial Hospital, Dr. E.E. Kearns and Dr. Fred DeFrancesco for damages arising out of alleged medical malpractice. During voir dire, the trial judge refused to allow the Babcocks to question the jury panel about the alleged "lawsuit crisis." The trial court rendered judgment in favor of the defendants in accordance with the jury's verdict. The court of appeals affirmed the judgment of the trial court. 751 S.W.2d 277. We reverse the judgment of the court of appeals and remand the cause to the trial court.

Artaruth Babcock broke her pelvis and was hospitalized. During her hospitalization, Mrs. Babcock developed blisters on her heels which allegedly ultimately resulted in the amputation of both her legs. Mrs. Babcock and her husband sued the hospital and her doctors alleging negligence in their care of Mrs. Babcock.

The trial court granted two pre-trial motions in limine. The first motion in limine prohibited "[a]ny mention of the alleged 'liability insurance crisis,' 'medical malpractice crisis', or any similar mention of or questions to potential jurors regarding the current state of affairs in the liability insurance industry." The second motion in limine prohibited "calling the jury's attention to any advertisements either on radio, television, in newspapers or magazines which speak of malpractice crisis and are paid for by and credited to insurance companies." During voir dire, a member of the jury panel stated that he had read articles and advertisements discussing the alleged liability crisis, and his concern for the effect of jury awards on insurance premiums might impede his ability to be impartial. After that juror was struck for cause, the Babcocks renewed their request for permission to question the entire jury panel about the alleged "lawsuit crisis." The trial court again denied the request. The following exchange took place before the bench:

COUNSEL FOR BABCOCKS: Your Honor, while everybody is still up here and on the record, I would like to bring—bring out the Court's ruling on my motion—on their Motion in Limine. It's my understanding that the Court has precluded me from asking questions as to whether the jury has heard or read about, not necessarily the insurance crisis, but the liability crisis and the lawsuit crisis. This man obviously is very influenced by it and I think his answer that he was concerned about malpractice, the insurance premiums specifically, I think that that brings forth the need and the necessity for a fair trial that the Plaintiff be allowed to go into this in a little more depth with all the rest of the jurors.

THE COURT: All right. Let the record show that was made, carefully considered, and the same ruling is in effect. Otherwise, it would open the door completely to both sides to go into that,

which would completely prejudice the jury. We couldn't get a fair trial.

After the jury was selected, the Babcocks for the third time objected to the trial court's refusal to allow questions concerning the alleged "lawsuit crisis" and asked for an opportunity later in the day to include the questions they would have asked the jurors in the record. The objection was overruled and the request denied.[1] After trial, the trial court rendered judgment in favor of the respondents. The Babcocks' motion for new trial included an affidavit which delineated the questions they would have asked during voir dire about the "lawsuit crisis."

The Babcocks appealed to the court of appeals claiming the trial court abused its discretion by prohibiting voir dire questions about the alleged "lawsuit crisis." The court of appeals, affirming the trial court's judgment, held that since the Babcocks did not timely advance the specific questions they wanted to ask, they could not complain on appeal that the trial court abused its discretion in refusing to allow the questions.

At issue in this cause is whether the trial court abused its discretion by prohibiting voir dire examination inquiring about the "lawsuit crisis" or "liability insurance crisis" and whether the Babcocks properly preserved error.

█ We disagree with the court of appeals' conclusion that the Babcocks failed to timely advance their proposed questions and thus failed to preserve error. Rule 52(a) of the Rules of Appellate Procedure states:

1. The trial judge claimed he had not denied the Babcocks the right to make a bill of exceptions. However, an examination of the record reveals that this was not true. The record revealed the following:

    COUNSEL FOR THE BABCOCKS: The Court asked us yesterday if we objected to the jurors who were seated with respect to the strikes that had been made. We don't have any objections to the strikes that were made. We didn't put anybody on the jury that we struck. We do have an objection that goes back to our urging the Court to allow us to go into the tort liability, liability crisis, lawsuit crisis, and I want to reurge that objection now.

In order to preserve a complaint for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling he desired the court to make if the specific grounds were not apparent from the context. It is also necessary for the complaining party to obtain a ruling upon the party's request, objection or motion. If the trial judge refuses to rule, an objection to the court's refusal to rule is sufficient to preserve the complaint. It is not necessary to formally except to rulings or orders of the trial court.

The record reflects that the Babcocks adequately apprised the trial court of the nature of their inquiry twice during trial after having originally objected to the trial court's grant of the respondents' motions in limine. During voir dire, the matter arose when a prospective juror expressed doubt about his ability to be impartial because of his concern about the effect of judgments on insurance premiums. Apart from the rest of the panel, the juror was questioned about his concerns for malpractice premiums. The juror answered affirmatively when asked if he had read advertisements about the difficulty of obtaining insurance because of jury verdicts. He stated he believed the assertions made in the advertisements and would be concerned about insurance premiums. After that juror was struck for cause, the Babcocks again requested permission to question the remaining prospective jurors about the "lawsuit crisis." The trial judge denied this request.

He was concerned with malpractice insurance premiums. I feel that my duty now to reurge the Court, although it's too late to reurge the Court, that we should have been allowed to go into those questions and if the Court wants me to at—I understand your ruling's already been made, but I would ask that at some recess maybe today or late this afternoon I be allowed to put those questions that I would have asked in the record so they might be reviewed later on if necessary.

THE COURT: Let the record show that this matter's already been ruled on twice, that this request that's made is carefully considered by this Court and denied. And we're ready to proceed I hope.

The Babcocks made a final objection at the conclusion of the voir dire examination, before any evidence was admitted. The Babcocks re-urged their objection and, while they acknowledged that the trial court's ruling had already been made, they requested an opportunity later in the day to enter in the record the questions they would have asked. The trial judge responded, "[l]et the record show that this matter's already been ruled on twice, that this request that's made is carefully considered by this court and denied."

We hold that the Babcocks properly preserved error in accordance with Tex.R.App. P. 52(a). They presented a timely request to the trial court, stating the specific grounds for the ruling they desired, and obtained a ruling from the court.

The court of appeals held that it was not compelled to find an abuse of discretion by the trial court because the specific questions were not before the trial court at the time of its decision and the offer of such questions by the Babcocks was not timely. This holding is inconsistent with the language of rule 52(a).

Rule 52(a) requires that specific grounds for a ruling be stated if the specific grounds are not apparent from the context. Tex.R.App.P. 52(a). There is no requirement to place specific questions in the record if the nature of the questions is apparent from the context. In this case, the language of the motions in limine and the recorded voir dire of the excused juror makes it obvious what questions the Babcocks wanted to ask. Furthermore, the Babcocks attempted to place their proposed questions into the record, but their request was denied by the trial court.

■ We now reach the Babcocks' contention that the trial court abused its discretion by refusing to allow them to question the jurors about the alleged "lawsuit crisis." In Texas, the right to a fair and impartial trial is guaranteed by the Constitution and by statute. *See* Tex. Const. art. I, § 15; Tex.Gov't Code Ann. § 62.105 (Vernon 1987). It is widely recognized that Texas courts permit a broad range of inquiries on voir dire. *Texas Employers Ins.*

*Ass'n v. Loesch,* 538 S.W.2d 435, 440 (Tex. Civ.App.—Waco 1976, writ ref'd n.r.e.); *Green v. Ligon,* 190 S.W.2d 742 (Tex.Civ. App.—Fort Worth 1945, writ ref'd n.r.e.). At the time of trial, tort reform and the debate concerning the alleged "liability insurance crisis" and "lawsuit crisis" were the subject of much media attention. No one can deny the media blitz spurred by the controversy over tort reform during the 1987 legislative session. Advertisements proclaiming a "lawsuit crisis" asserted that personal injury lawsuits had created an economic crisis and that excessive jury awards resulted in higher premiums.

Media coverage of the alleged "lawsuit crisis" has unquestionably created the potential for bias and prejudice on both sides of the personal injury docket. As stated in *Green,* "[i]f counsel has reason to believe that a juror is directly or indirectly interested in the result of the trial to be had, he has a right to question the juror touching that interest." *Green,* 190 S.W.2d at 747.

In a recent opinion, the Second Court of Appeals, when confronted with the same issue, held that the plaintiffs had a right to question the jury to determine if anyone was prejudiced against plaintiffs' rights by such advertising. *National County Mut. Fire Ins. Co. v. Howard,* 749 S.W.2d 618, 621 (Tex.App.—Fort Worth 1988, writ denied). The defendants in *Howard* alleged error by the trial court because the plaintiffs were allowed to question prospective jurors about certain advertisements on tort reform. They contended that such questioning interjected liability insurance into the case. *Id.* at 620. The court of appeals held that such questions were necessary to ask and that the questions in no way indicated the defendants were insured. *Id.* at 621.

■ Similarly, the respondents in this case contend that allowing such questions would interject insurance into the case. We are unpersuaded by this argument. The mere mention of insurance is not necessarily grounds for reversal. *St. Louis S.W. Ry. Co. v. Gregory,* 387 S.W.2d 27, 33 (Tex.1965); *Dennis v. Hulse,* 362 S.W.2d 308, 309 (Tex.1962). When the Babcocks

requested to ask the prospective jurors questions about the "liability crisis" and the "lawsuit crisis," they specifically stated they did not want to question the jury about insurance. The proposed voir dire questions that were subsequently filed with the trial court avoid any mention of insurance.

The test for abuse of discretion is whether the trial court acted without reference to any guiding rules and principles or whether the act was arbitrary and unreasonable. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985). Both the Fourteenth Court of Appeals and the Second Court of Appeals have concluded that litigants have a right to question prospective jurors about their exposure to media coverage of the "lawsuit crisis." 751 S.W.2d at 278; *Howard*, 749 S.W.2d at 621. This right is based on the fundamental right to trial by a fair and impartial jury. We hold that the trial court abused its discretion by refusing to allow the Babcocks to question the jurors about the alleged "lawsuit crisis."

 A broad latitude should be allowed to a litigant during voir dire examination. This will enable the litigant to discover any bias or prejudice by the potential jurors so that peremptory challenges may be intelligently exercised. *Lubbock Bus Co. v. Pearson*, 277 S.W.2d 186, 190 (Tex.Civ.App.—San Antonio 1955, writ ref'd n.r.e.). Although we recognize that voir dire examination is largely within the sound discretion of the trial judge, *Loesch*, 538 S.W.2d at 440, a court abuses its discretion when its denial of the right to ask a proper question prevents determination of whether grounds exist to challenge for cause or denies intelligent use of peremptory challenges. *Dickson v. Burlington N.R.R.*, 730 S.W.2d 82, 85 (Tex.App.—Fort Worth 1987, writ ref'd n.r.e.).

In the instant case, the Babcocks were denied the opportunity to intelligently exercise challenges. The trial court's refusal to allow questions directed at exposing bias or prejudice resulting from the controversy over tort reform denied the Babcocks the right to trial by a fair and impartial jury.

Respondents contend that the trial court's refusal to allow the questions was harmless error. We disagree. The trial court's actions, which resulted in the denial of the Babcocks' constitutional right to trial by a fair and impartial jury, was harmful. *Texas & Pac. Ry. v. Van Zandt*, 159 Tex. 178, 182, 317 S.W.2d 528, 531 (1958). Therefore, we hold that the trial court's refusal to allow questions during voir dire addressing the alleged "liability insurance crisis" and "lawsuit crisis" was an abuse of discretion and was reasonably calculated to cause and probably did cause the rendition of an improper judgment. Tex.R.App.P. 81(b).

The judgment of the court of appeals is reversed and the cause is remanded to the trial court.