Opinion issued November 4, 2004


















In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-02-00829-CV
____________
 
GEORGE LEWIS, Appellant
 
V.
 
UNITED PARCEL SERVICE, INC., Appellee
 

 
 
On Appeal from the 189th District Court
Harris County, Texas
Trial Court Cause No. 00-19870
 

 
 
O P I N I O N
          Appellant, George Lewis (Lewis), challenges a judgment entered on a take-nothing jury verdict in favor of appellee, United Parcel Service, Inc. (UPS), in his suit
for negligence. Lewis presents seven issues, contending that the trial court erred in 
refusing to submit “a jury question regarding UPS’s right of control,” admitting
hearsay testimony and denying Lewis the opportunity to voir dire a witness or to
make an offer of proof, denying Lewis’s motion for a mistrial, admitting expert
opinion testimony that was based on a “false assumption,” and denying his motion
for a new trial. Lewis also contends that the jury’s finding that UPS was not
negligent was against the great weight and preponderance of the evidence and that the
evidence was legally and factually insufficient to support the jury’s finding that he
was negligent.
          We affirm.
Background
          On October 11, 1999, Lewis, a millwright employed by Turbex Inc. (Turbex),
arrived at a UPS facility at approximately 6:45 p.m., to repair a conveyer belt, the
“M1-G2.” Before making the repair, Lewis performed a “lockout/tagout” safety
procedure


 on the M1-G2 to prevent it from unexpectedly starting up. Although
another adjacent feed belt, the “PF1-1” continued in operation, it stopped after an
employee shift change. Around 10:30 p.m., while Lewis stepped onto the PF1-1 to
retrieve a tool, he heard a buzzer signaling the start of the conveyor belt. Before he
could escape, the conveyor belt injured his right foot. 
          In its charge to the jury, the trial court included standard definitions, in regard
to both individuals and companies, of “negligence” and “ordinary care” and presented
the following broad-form negligence question:
Did the negligence, if any, of those named below, proximately cause the
injury in question?

          Answer “YES” or “NO” for each of the following:
                    a. United Parcel Service, Inc.    _____
                    b. George Lewis                         _____ 
The jury answered “no” as to UPS and “yes” as to Lewis.
Jury Question on UPS’s Right to Control
          In issue one, Lewis contends that the trial court erred in failing to submit a
right to control question to the jury. In fact, at the charge conference, both parties
asked to have a right to control question added to the jury charge. Lewis requested
that the following question be submitted: “Did United Parcel Service, Inc. [UPS] have
the right to control safety policies and procedures at the Mykawa facility?” The trial
court denied Lewis’s request. 
          Lewis’s petition alleges the negligent acts were that (1) UPS’s employee started
the conveyor without any warning and (2) UPS’s buzzer did not work properly. It is
uncontested that UPS is the owner of the Mykawa facility where Lewis was injured;
UPS contracted with Lewis to repair the conveyor; and a UPS employee started the
belt that caused Lewis’s injuries. UPS undoubtedly has the right to control the safety
policies and procedures of its own employees at its own facility. See Otis Eng’g
Corp. v. Clark, 668 S.W.2d 307, 309 (Tex. 1983) (duty based on right to control is
implicit in the master-servant relationship). Because these acts are attributable to
UPS, not an independent contractor, UPS’s right to control is implicit and, therefore,
not an issue in this case. As such, the trial court did not err in refusing to submit the
issue of right to control to the jury; rather, it properly submitted the issue of general
negligence only. See Centeq Realty, Inc. v. Siegler, 899 S.W.2d 195, 197 (Tex.
1995).
          Lewis contends that the UPS employee turned on the conveyor belt, “instantly
causing [Lewis’s] right foot to be pulled into the belt drive system.” “There was no
time between the time [Lewis] heard the buzzer warning that the belt was going to be
turned on and when the belt just took off and caught [Lewis’s] foot.” When an injury
arises by or contemporaneously with the activity itself, a negligent activity claim
arises. See Keetch v. Kroger Co., 845 S.W.2d 262, 264 (Tex. 1992); Wilson v. Metz,
No. 01-00-01193-CV, 2002 WL 501648, at *3 (Tex. App.—Houston [1st Dist.] Apr.
4, 2002) (not designated for publication). The evidence shows that Lewis was injured
by or contemporaneously with the negligent activity itself, not by a condition created
by the activity. Considering Lewis’s injury to be the result of the negligent activity
of UPS itself, the trial court found UPS had a duty as a matter of law. Therefore,
UPS’s duty was not a question of fact for the jury to determine under the
circumstances of this case. 
          If negligent activity is raised by the evidence, general negligence instructions
are proper. See Keetch, 845 S.W.2d at 264; Ramming, 861 S.W.2d at 464–65.
Because this case is a claim for negligent activity, a general negligence charge was
proper. See Keetch, 845 S.W.2d at 264; Ramming, 861 S.W.2d at 464–65. 
          The evidence supported a claim based on negligent activity. Having found
duty as a matter of law, the trial court did not err in submitting a general negligence
charge. 
          We overrule issue one.
Denial of Voir Dire Examination and Offer of Proof
          In issue two, Lewis contends that the trial court erred in “denying [him] the
opportunity to voir dire [Paul Allen, a UPS security representative] or make an offer
of proof” that was “necessary to demonstrate that Allen’s testimony was based purely
on hearsay.”
          At trial, the following exchange took place:
[UPS]:[UPS] calls Paul Allen.
 
[Lewis]:At this time [Lewis] moves to voir dire Paul Allen outside
of the presence of the jury.
 
[UPS]:Mr. Allen is a plant engineering supervisor who would
have been responsible for - -
 
The Court:Supervisor for who?
 
[UPS]:UPS.
 
The Court:Request for voir dire is respectfully overruled.
 
          [Lewis]:       Judge, I need to make an offer of proof.
 
          The Court:   We can do it later.
 
[Lewis]:Judge, I wanted to give a narrative. I can’t waive anything,
Judge.

          Later, during UPS’s direct examination of Allen and after the trial court
excused the jury for lunch, the following exchange took place:
          The Court:   Couple of things we need to cover. Prior to Mr. Allen coming to
the bench [Lewis’s] attorney asked if he could take him on voir
dire outside the presence of the jury. I know that the reason may
be moot now, but I don’t know that for certain. So if there is
anything [Lewis’s] attorney wants to make as far as a bill, you can
do that now if you like. I ask you to keep it relatively brief if you
need to. Anything?
 
          [Lewis]:       No. I will just cross him.

          Although Lewis asserts that Allen’s testimony was inadmissible because “it
was based purely on hearsay” and that he was prevented from showing this fact 
because the trial court did not allow him to voir dire Allen, Lewis directs us to no
portion of Allen’s testimony that he objected to as hearsay. Lewis merely asserts that
Allen’s testimony was “inadmissible and its admission probably caused the rendition
of an improper judgment.” An error may not be predicated upon a ruling that admits
evidence unless a substantial right of a party is affected and a timely objection or
motion to strike appears in the record, stating the specific ground for the objection,
if the specific ground was not apparent from the context. Tex. R. Evid. 103(a)(1). 
          In regard to Lewis’s assertion that the trial court denied him the opportunity to
voir dire Allen, there is nothing in the record showing what Lewis intended to prove
in his voir dire examination of Allen. Moreover, in regard to Lewis’s assertion that
the trial court prevented him from making an offer of proof until “it was too late,”
Rule of Evidence 103(b) states that “[t]he offering party shall, as soon as practicable,
but before the court’s charge is read to the jury, be allowed to make, in the absence
of the jury, its offer of proof. Tex. R. Evid. 103(b) (emphasis added). Here, Lewis
expressly declined the trial court’s invitation to make an offer of proof during a break
in Allen’s testimony and well before the charge was read to the jury. Thus, there is
no basis for us to review the trial court’s admission of Allen’s testimony and its denial
of Lewis’s request to voir dire Allen. See Tex. R. App. P. 33.1(a). Accordingly, we
hold that Lewis has waived any error in regard to issue two.
          We overrule issue two.
Testimony Concerning Workers’ Compensation Benefits
          In issue three, Lewis argues that the trial court erred in failing to grant “a
mistrial or a new trial” because “the jury was prejudiced” by testimony that Lewis
received workers’ compensation benefits.
          We review a trial court’s denial of a mistrial under an abuse of discretion
standard. Till v. Thomas, 10 S.W.3d 730, 734 (Tex. App.—Houston [1st Dist.] 1999,
no pet.). A trial court abuses its discretion if it acts without reference to any guiding
rules or principles. Downer Aquamarine Operators, Inc., 701 S.W.2d 238, 241–42
(Tex. 1985).
          The injection of the issue of insurance into a trial does not automatically create
reversible error. Babcock v. Northwest Mem’l Hosp., 767 S.W.2d 705, 708 (Tex.
1989). Rather, a complaining party must establish that the injection of the issue of
insurance was prejudicial and actually caused the rendition of an improper judgment. 
See Beall v. Ditmore, 867 S.W.2d 791, 795 (Tex. App.—El Paso 1993, writ denied). 
In the absence of a clear showing by the complaining party that any reference to
insurance resulted in harm or prejudice, a trial court does not abuse its discretion in
refusing to declare a mistrial. Brownsville Pediatric Ass’n v. Reyes, 68 S.W.3d 184,
193 (Tex. App.—Corpus Christi 2002, no pet.).
          During UPS’s redirect examination, Larry Alvarez, the owner of Turbex,
testified as follows:
[UPS]:Mr. Alvarez, have you had any discussions with Mr. Lewis
since the accident about the possibility of him coming back
to work?
 
          [Alvarez]:    Yes, sir, [I] have.
 
          [UPS]:         Where were you when that conversation took place?
 
[Alvarez]:Well, a couple of times—I can remember one time in
particular I was out at a jobsite on my mobile phone. I had
just talked to [Lewis’s] brother, who worked for us at the
time, and [Lewis] had talked to me a couple of weeks
before or sometime before. I think his workman’s comp
was fixing to run out and he was worried about his source
of money. And you know, trying to help the best way I
could, I told him to go file for unemployment. That was
money I had paid for on his behalf.

Lewis immediately objected to Alvarez’s testimony because it violated his motion in
limine and he requested an instruction to disregard. The trial court then sustained
Lewis’s objection, instructed the jury to disregard Alvarez’s answer, and then excused
the jury from the courtroom.
          At this point, Lewis moved for a mistrial. However, after hearing argument
from the parties, the trial court denied Lewis’s motion. The trial court then brought
the jury back into the courtroom and gave them the following additional instruction:
[The Court]:. . . .
 
I need to address one other area with you. And this
is what took us so long. We were trying to find the
best way to handle this situation. And this is our
result. You just heard—and it wasn’t anything
intentional on his part. Mr. Alvarez is not an
attorney. He is a business owner and that’s why he
is here today. He mentioned the issue of worker’s
compensation insurance. Best way for us to handle
this is just to tell you now that there is what’s called
a worker’s compensation lien in this case. Mr.
Lewis did receive worker’s compensation benefits. 
Because there’s a lien, and that’s just like a
materialman’s lien or something else, they, worker’s
compensation has a stake in this case. And if there
is a recovery by [Lewis], part of that recovery will
go to the worker’s compensation company to
reimburse them for the benefits they paid Mr. Lewis. 
That’s all we need to say about that here. And let
me just leave it at that.

          Lewis argues that Alvarez’s testimony “left the impression with the jury that
Mr. Lewis was taken care of financially and clearly resulted in the jury’s failure to
find any negligence on the part of UPS.” Furthermore, Lewis asserts that, because
it was “uncontroverted” that he suffered damages, the jury’s failure to award him
damages “clearly demonstrated [that the jury] was not going to follow any of the trial
court’s instructions.”
          However, in the absence of evidence to the contrary, we must presume that a
jury followed a trial court’s instructions. Turner, Collie & Braden, Inc. v.
Brookhollow, Inc., 642 S.W.2d 160, 167 (Tex. 1982). Here, during deliberations, the
jury submitted the following question to the trial court: “[i]f in question one we find
that UPS was not negligent, do we answer [the damage question]?” After consulting
with the parties, the trial court instructed the jury to “[p]lease follow the instructions
as given to you in the charge of the [c]ourt.” Neither party objected to this
instruction, and Lewis does not challenge it on appeal. After further deliberations,
the jury returned its finding of zero damages. It does not logically follow that,
because the jury returned a finding of zero damages, it “was not going to follow any
of the trial court’s instructions.”
          We conclude that Lewis has not made a clear showing that he was harmed or
prejudiced by Alvarez’s testimony that he received worker’s compensation benefits. 
Accordingly, we hold that the trial court did not abuse its discretion in denying
Lewis’s motion for a mistrial.
          We overrule issue three.
Sufficiency of the Evidence
          In issue five, Lewis argues that the evidence in support of the jury’s finding
that UPS was not negligent was factually insufficient. In issue six, Lewis argues that
the jury’s finding that he was negligent was not supported by legally and factually
sufficient evidence.
          In our review of the legal sufficiency of the evidence, we consider all of the
evidence in the light most favorable to the party in whose favor the verdict was
rendered, and we indulge every reasonable inference from the evidence in that party’s
favor. Formosa Plastics v. Presidio Eng’rs, 960 S.W.2d 41, 48 (Tex. 1998). 
Anything more than a scintilla of evidence is legally sufficient to support the finding. 
Id. 
          Our review of the factual sufficiency of the evidence that Lewis was negligent
requires us to consider, weigh, and examine all of the evidence that supports and
contradicts the jury’s determination. Plas-Tex, Inc. v. U.S. Steel Corp., 772 S.W.2d
442, 445 (Tex. 1980). We may set aside the verdict only if the evidence that supports
the jury’s finding is so weak as to be clearly wrong and manifestly unjust. Cain v.
Bain, 709 S.W.2d 175, 176 (Tex. 1986). In our review of the factual sufficiency of
the evidence that UPS was not negligent, we must first examine the record to
determine if there is some evidence to support the finding and, if so, then we must
determine, in light of the entire record, whether the finding is so contrary to the
overwhelming weight and preponderance of the evidence as to be clearly wrong and
manifestly unjust. Dow Chem. Co. v. Francis, 46 S.W.3d 237, 241 (Tex. 2001). 
          Lewis argues that the jury’s finding that UPS was not negligent was against the
great weight and preponderance of the evidence because (1) “[he] had no reason to
believe the PF1-1 was still active, because he had watched the last shift leave for the
night,” (2) Jerry Carpenter, a UPS supervisor, “could have alerted [him] at 8:00 p.m.
that a shift was coming in at 10:00 p.m.,” and (3) Carpenter could have told the
employee who started the PF1-1 that Lewis was repairing the M1-G2 conveyor belt
“before authorizing her to start the [PF1-1] at 10:00 p.m.” Lewis also contends that
this evidence was so strong that it demonstrates that the evidence supporting the
jury’s finding that he was negligent was so weak that the finding was clearly wrong
and manifestly unjust. Moreover, Lewis asserts the expert witness testimony of
Lanny Berke, a mechanical engineering safety consultant, who stated that Lewis was
negligent because he was “required” to lockout/tagout the PF1-1 was “no evidence”
because a federal regulation, upon which Berke relied on in reaching this conclusion,
did not apply to Lewis “between shift changes.” 
          Regardless of Berke’s testimony that Lewis was negligent, there was ample
evidence, under each of the appropriate standards of review, to support the jury’s
findings that UPS was not negligent and that Lewis was negligent. Carpenter
testified that Lewis was authorized to lockout the PF1-1 if he “needed that belt shut
off” and that, if Lewis had followed the lockout/tagout safety procedure in regard to
the PF1-1, it would not have started. Allen testified that the five-second delay
between the warning buzzer and the start of the PF1-1 had worked the day after Lewis
was injured, and Alvarez testified that Lewis told him that he had heard the buzzer
and that he “just [did not] react to it.” Alvarez also testified that Turbex was
responsible for training Lewis in “the safety aspects of his job” and for supervising
him while he was at a customer’s facility, and that Lewis should have gotten out of
“harm[’s] way very fast” when he heard the buzzer.
          Lewis admitted that lockout/tagout was an important safety procedure and that
he had been using it “for a very long time.” He also testified that he knew that it was
dangerous to step onto a conveyor belt that had not been locked out, and he admitted
that nothing had prevented him from locking out the PF1-1. Finally, Berke also
testified that he examined the scene of the accident, reviewed the relevant documents,
and concluded that, in his opinion, UPS did nothing to cause the accident.
          This evidence supports the jury’s finding that Lewis, and Lewis alone, was at
fault for his accident. Accordingly, we hold that the evidence was legally sufficient
to support the jury’s finding that Lewis was negligent. Moreover, we cannot
conclude that the evidence supporting the jury’s finding that Lewis was negligent was
so weak, or the evidence against it so strong, that the finding was clearly wrong and
manifestly unjust. Neither can we conclude that the jury’s finding that UPS was not
negligent was so against the great weight and preponderance of the evidence as to be
manifestly unjust. Accordingly, we hold that the evidence was factually sufficient to
support the jury’s findings that UPS was not negligent and that Lewis was negligent.
          We overrule issues five and six.
Conclusion
          Having held that the evidence was factually sufficient to support the jury’s
finding that UPS was not negligent and legally and factually sufficient to support the
jury’s finding that Lewis was negligent, we need not address issue four (that the trial
court erred in admitting expert opinion testimony regarding Lewis’s loss of earning
capacity) and issue seven (that the trial court erred in denying Lewis’s motion for a
new trial because the jury’s finding of zero damages was contrary to the uncontested
evidence and the instructions in the jury charge).
          We affirm the judgment of the trial court.
 
 
                                                                        Sherry Radack
                                                                        Chief Justice

Panel consists of Chief Justice Radack and Justices Jennings and Higley.

Justice Jennings, concurring in the judgment only.