

# NUMBER 13-24-00093-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

### IN RE THE COMMITMENT OF RICHARD TARVIN

---

### ON APPEAL FROM THE 277TH DISTRICT COURT
### OF WILLIAMSON COUNTY, TEXAS

---

## MEMORANDUM OPINION

**Before Justices Longoria, Tijerina, and Peña**
**Memorandum Opinion by Justice Peña**

A Williamson County jury found appellant Richard Tarvin to be a sexually violent predator (SVP), and the trial court ordered him indefinitely committed for sex-offender treatment and supervision. *See* TEX. HEALTH & SAFETY CODE ANN. ch. 841 (SVP Act). On appeal, Tarvin argues that the trial court reversibly erred by denying him his right to ask a proper commitment question to the jury. We affirm.[1]

---

[1] This case is before this Court on transfer from the Third Court of Appeals in Austin pursuant to a docket-equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001.

# I.    BACKGROUND

The State of Texas filed its petition to civilly commit Tarvin on June 21, 2022. The State's petition alleged one prior conviction for sexual assault, and two convictions for aggravated sexual assault. *See id*. § 841.002(8)(A). The petition further alleged that Tarvin suffered from a behavioral abnormality. *See id*. § 841.023. Jury selection began on October 2, 2023. During voir dire, defense counsel questioned the panel as follows:

| [Defense counsel]: | So when you were talking earlier, you said that you were biased when it comes to kids . . . but that you might be fair? |
| --- | --- |
| [Juror]: | Yes. |
| [Defense counsel]: | So this is the kind of case where you might have to listen to multiple instances of child sex crimes. Can you listen to that evidence? |
| [Juror]: | No. |
| [Defense counsel]: | So can you be fair and impartial? |
| [Juror]: | No. |
| [Defense counsel]: | So what about everybody else? In a case where there's a lot—that there might be criminally violent offenses having to do with children, is there anybody that we haven't heard from that wouldn't be able to listen to evidence regarding that? . . . . |

After a separate juror said, "I can't," the State objected that defense counsel was asking an improper commitment question. Although the State agreed that defense counsel could properly ask questions about sex offenses against children, the prosecutor argued that "[n]ow we're talking about multiple instances—we're going into the facts and testing the jury's feelings about the facts of the evidence before we've got a jury." The

2

trial court sustained the State's objection, stating that "you need to not get into any like multiple instances," and that defense counsel "need[s] to keep it more vague." The trial court permitted defense counsel to continue and re-ask the question properly but noted that she could not continue to engage the jurors who had responded to the question she had just asked "because that's the exact commitment question." Defense counsel continued, asking if "there [is] anybody who can't listen to the evidence in a case like this?"

At the conclusion of voir dire, a jury was empaneled, and the trial commenced. The State's expert witness, Psychiatrist Michael Arambula, M.D., testified that he conducted an evaluation of Tarvin and diagnosed him with "sexual deviance and pedophilia," and an "unspecified personality disorder." Dr. Arambula opined that because of Tarvin's pedophilia, he had a "behavioral abnormality" that made him likely to engage in a predatory act of sexual violence. The jury found Tarvin to be an SVP, and the trial court ordered him indefinitely committed under the SVP Act. This appeal followed.

## II.  PROPRIETY OF COMMITMENT QUESTION

By his sole issue, Tarvin argues that the "trial court reversibly err[ed] when it denied [him] the right to ask a proper commitment question regarding multiple sex offenses against children." In particular, Tarvin argues as follows:

> The question Tarvin posed to the venire panel asked them if evidence of multiple instances of sex offenses against children would resolve the issue of whether Tarvin has a behavioral abnormality on the basis of the convictions alone. Given the equivocation of several members of the jury pool, Tarvin's question about "multiple instances" was a reasonable and proper commitment question that should have been allowed. The trial court reversibly erred when it denied Tarvin the right to ask a proper commitment question to determine whether grounds existed for a challenge for cause or use of a peremptory strike.

3

## A. Standard of Review & Applicable Law

The SVP Act provides for the civil commitment of SVPs based on legislative findings that "a small but extremely dangerous group of sexually violent predators exists and that those predators have a behavioral abnormality that is not amenable to traditional mental illness treatment modalities and that makes the predators likely to engage in repeated predatory actions of sexual violence." *Id.* § 841.001.

The SVP Act requires the State to prove beyond a reasonable doubt that a person is a sexually violent predator. *Id.* § 841.062. Under the SVP Act, a person is a sexually violent predator if the person (1) is a repeat sexually violent offender and (2) suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence. *Id.* § 841.003(a). A behavioral abnormality is "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *Id.* § 841.002(2). A predatory act is "an act directed toward individuals, including family members, for the primary purpose of victimization." *Id.* § 841.002(5).

"Litigants have the right to question potential jurors to discover biases and to properly use peremptory challenges." *In re Commitment of Hill*, 334 S.W.3d 226, 228 (Tex. 2011). This right is "constrained by reasonable trial court control." *Hyundai Motor Co. v. Vasquez*, 189 S.W.3d 743, 753–54 (Tex. 2006). We review a trial court's refusal to allow lines of questioning during voir dire for an abuse of discretion. *Commitment of Hill*, 334 S.W.3d at 229. "The proper discretion inquiry turns on the propriety of the question:

4

'a court abuses its discretion when its denial of the right to ask a proper question prevents determination of whether grounds exist to challenge for cause or denies intelligent use of peremptory challenges.'" *Id*. (quoting *Babcock v. Nw. Mem'l Hosp.,* 767 S.W.2d 705, 709 (Tex.1989)).

"Commitment questions are those that commit a prospective juror to resolve, or to refrain from resolving, an issue a certain way after learning a particular fact." *Standefer v. State*, 59 S.W.3d 177, 179 (Tex. Crim. App. 2001). A commitment question attempts to "bind or commit a prospective juror to a verdict based on a hypothetical set of facts." *id*. Commitment questions "require a venireman to promise that he will base his verdict or course of action on some specific set of facts before he has heard any evidence, much less all of the evidence in its proper context." *Sanchez v. State*, 165 S.W.3d 707, 712 (Tex. Crim. App. 2005). "In addition, although commitment questions are generally phrased to elicit a 'yes' or 'no' answer, an open-ended question can be a commitment question if the question asks the prospective juror to set the hypothetical parameters for his decision-making." *Standefer*, 59 S.W.3d at 180.

"Not all commitment questions are improper." *Id.* at 181. We apply a three-part test for determining whether a voir dire question is an improper commitment question. *Id.* at 179–84. First, the trial court must determine whether a particular question is in fact a commitment question. *Id.* at 179. Second, if it is a commitment question, then the court must decide whether it is nevertheless a proper commitment question. *Id.* at 181. To determine whether the question is a proper commitment question, the court first inquires whether one of the possible answers to the question gives rise to a valid challenge for cause. *Id.* at 182. If it does not, then the question is not proper and should be disallowed

5

by the trial court. *Id.* Third, if the commitment question gives rise to a valid challenge for cause, then the court must determine whether the question contains only those facts necessary to test whether a prospective juror is challengeable for cause. *Id.*

Counsel may "question jurors about bias or prejudice resulting from a societal influence outside the case," and "it is not unusual for jurors to hear the salient facts of the case during the voir dire." *Hyundai Motor Co.*, 189 S.W.3d at 753. But, "a trial court does not abuse its discretion in refusing to allow questions that seek to determine the weight to be given (or not be given) a particular fact or set of relevant facts." *Id.* This is so because the answer to the question would not be disqualifying, but would reveal a "fact-specific opinion," not "improper subject-matter bias." *Id.*

## B.    Discussion

Tarvin argues that by prohibiting defense counsel from asking the complained-of commitment question, he was unable to seek "out the biases and prejudices of those potential jurors who indicated that multiple convictions of sex offenses against children would resolve the behavioral abnormality issue on the basis of the convictions alone." We agree with the underlying legal premise of Tarvin's argument. The Texas Supreme Court has expressly sanctioned this type of commitment question under the SVP Act. In *Commitment of Hill*, the trial court prohibited defense counsel from asking a commitment question when the State objected after

> Hill's attorney . . . attempted to ask the panel whether, if the State proved that Hill had committed two or more violent sexual offenses, the potential jurors would convict Hill based on that evidence alone or would also require the State to prove the statute's second element—that Hill had a behavioral abnormality predisposing him to commit such acts.

334 S.W.3d at 228.

6

The Supreme Court of Texas disagreed with the trial court, concluding that "the 'commitment' that the potential jurors were asked to make was legislatively mandated:"

> they were asked whether they would require the state to prove both elements of a conjunctive statute. Jurors swear an oath to render a true verdict according to the law and to the evidence. Implicit in that oath is a commitment to follow the law the Legislature enacted, and a party participating in jury selection may solicit from potential jurors that promise, essential to the empaneling of a fair jury. The trial court thus abused its discretion by refusing to permit the line of questioning.

*Id.* at 229–30 (cleaned up).

While Tarvin is correct that *Commitment of Hill* sanctions asking jurors if they would convict Tarvin based on his commission of multiple violent sexual offenses alone, and thus disregarding the issue of behavioral abnormality, his argument does not adequately account for how defense counsel's objection was presented and ruled upon by the trial court. *See* TEX. R. APP. P. 33.1(a)(1)(A) (noting that in order to preserve a complaint for appellate review, the record must show that the complaint was made to the trial court by a timely objection that "stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context").

Tarvin was, in fact, able to ask jurors whether they would be able to listen to evidence regarding "multiple instances of child sex crimes." The State did not object to this question. The State only objected after defense counsel asked potential jurors whether they could listen to evidence in a case where "there's a lot" of talk about "criminally violent offenses having to do with children." The State agreed that defense counsel could ask jurors if they could listen to evidence in a case involving sexually violent

offenses against children, but argued that in asking the jurors whether they could listen to evidence involving "a lot" of alleged offenses, "now you're testing [a proper commitment question] with even more information to the specific facts of the case," rendering the question improper. According to the State, "[n]ow we're talking about multiple instances – we're going into the facts and testing the jury's feelings about the facts of the evidence before we've got a jury." The trial court, in sustaining the State's objection, informed defense counsel not to ask the question just asked, the question using the term "a lot," and noting that defense counsel could not continue asking jurors questions based on their response to that particular question "because that's the exact commitment question." Accordingly, any complaint by Tarvin that he was denied his right to inquire into jury bias or prejudice by asking jurors if they could fairly hear evidence involving "multiple instances of child sex crimes" is without merit, as it was not the question to which the State lodged an objection.

Consequently, as presented, the issue is whether it is a proper commitment question to ask prospective jurors if they could be fair in a case involving "a lot" of "criminally violent offenses having to do with children."[2] Unlike the term "multiple instances," there is no plausible argument that by using the phrase "a lot" that defense counsel was asking whether the jurors would require the State to prove both elements of the statute because the State is not required to prove "a lot" of convictions for sexually violent offenses, but rather, only "more than one conviction." TEX. HEALTH & SAFETY CODE

---

[2] Tarvin implies that there is no difference between defense counsel's two questions when he argues in his brief, right after quoting the transcript wherein the State's objection was sustained, that "Tarvin's question did not give the venire members any more information, much less more specific information on the facts of the case, that the State had already previously provided."

ANN. § 841.003(a)(2). Accordingly, *Commitment of Hill* is inapposite. *See* 334 S.W.3d at 228–30.

Rather, this case is more like *In re Commitment of Smith*, in which the court of appeals found no abuse of discretion in a trial court sustaining the State's objection to the following commitment question: "if an individual has five prior sex offenses, do you feel you could sit and be fair and impartial as a juror in that trial?" 422 S.W.3d 802, 807 (Tex. App.—Beaumont 2014, pet. denied). The court of appeals continued,

> On appeal, Smith argues his trial counsel presented a proper commitment question that asked the jurors whether they would require the State to prove "both elements of a conjunctive statute." Smith questioned the venire panel about the predicate convictions and behavioral abnormality without an objection from the State; therefore, the trial court allowed Smith to ask the question that was at issue in *Hill.* In this case, the State's objection was to asking the venire panel if anyone on the panel would be swayed by specific evidence. Smith's question isolated one relevant fact and sought to gauge its impact on the venire panel. The trial court could reasonably have concluded that Smith was suggesting that to be fair, the jury must not decide the case based on a relevant fact, and that the substance of the proposed question did not present a basis for disqualifying a juror for cause but sought to test the weight jurors would place on Smith's four previous convictions.

*Commitment of Smith*, 422 S.W.3d at 808.

As in *Commitment of Smith*, here, defense counsel's use of the phrase "a lot" pertained to the evidence and facts in the case, and not one of the statutory elements of the offense. *See id*. 807–08. Accordingly, the trial court did not abuse its discretion in prohibiting defense counsel from asking a question that invited the jurors "to determine the weight to be given (or not be given) a particular fact or set of relevant facts." *Hyundai Motor Co.*, 189 S.W.3d at 753; *see also In re Commitment of Browning*, No. 02-21-00417-CV, 2022 WL 16846741, at *15 (Tex. App.—Fort Worth Nov. 10, 2022, no pet.) (mem. op.) (finding no abuse of discretion in prohibiting defense counsel from asking a particular

commitment question trying to elicit bias or prejudice related to child victims, reasoning that "because Browning's counsel prefaced the question with 'you're going to hear some evidence about a victim who is a child,' the trial court could have concluded that counsel was probing the venire members for how they would vote on a specific factual issue in the case"). We overrule Tarvin's sole issue.

### III. CONCLUSION

We affirm the trial court's judgment.

L. ARON PEÑA JR.
Justice

Delivered and filed on the
21st day of November, 2024.